Filed 10/1/15  In re Ariana B. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re ARIANA B. et al., Persons Coming Under the Juvenile Court Law. | B262781 <br> (Los Angeles County <br> Super. Ct. No. CK74007) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> STEPHANIE O., <br><br>     Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Timothy R. Saito, Judge.  Affirmed.

Michelle L. Jarvis, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel, Tyson B. Nelson, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

After the juvenile court terminated reunification services more than a year after asserting dependency jurisdiction over Stephanie O.'s (mother) three children, mother filed a petition under Welfare and Institutions Code section 388[1] that sought to reinstate reunification services on the ground that mother had completed a residential drug treatment program and other counseling programs. The juvenile court concluded that her efforts, while commendable, constituted only "*changing* circumstances" (rather than "*changed* circumstances") and that reinstating reunification was not in the best interest of the children. On the record before us, the juvenile court did not abuse its discretion. We accordingly affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother has three children—Ariana B. (born 2005), David B. (born 2007), and S.B. (born 2008). Mother and the children were involved in a car accident in August 2012, and hospital staff suspected mother was under the influence of drugs and contacted the Los Angeles County Department of Children and Family Services (Department). When the Department interviewed the children, each reported that mother had beat them with a belt and S.B. indicated the beatings left marks and bruises. Mother also has a longstanding drug addiction: She started using "speed" at age 18, although she had experienced periods of sobriety of up to three years; she sustained a 2007 conviction for possessing a controlled substance; and the juvenile court from 2008 through 2011 asserted dependency jurisdiction over the children due to her methamphetamine use. Moreover, two of the children reported during their interview that mother used drugs: Ariana said mother smoked "weed," but that the "weed" was "white and she smokes it in a pipe"; David said mother smoked green "weed" and "smokes something else, too, but I'm not going to tell you."

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

The Department filed a petition seeking to have the juvenile court again assert dependency jurisdiction over the children under section 300, subdivisions (a), (b) and (j) because: (1) mother physically abused Ariana and David by striking them with a belt; (2) mother physically abused S.B. by striking her with a belt and causing marks and bruises; and (3) mother has an unresolved history of substance abuse and is a user of marijuana. In March 2013, the juvenile court sustained the petition on all three grounds, ordered the children removed from mother and placed in the custody of the same foster family, and ordered reunification services for mother.[2]

During the ensuing 13 months of reunification services, mother was arrested three times, including for threatening *her* mother with a wooden axe handle after being confronted about using marijuana. Prior to the criminal trial on that matter, mother was sent to a mental hospital to assess her competency to stand trial; the mental health specialists at the jail and at the treatment facility found her to have amphetamine dependence and to suffer from bipolar disorder and borderline personality disorder. Mother also skipped several drug tests and, in January 2014, admitted to using methamphetamines (although she later accused the social worker of fabricating that admission). During this time, mother's visits with the children were irregular. The children were happy to see mother when she visited, but the elder two children called their foster parents "mom" and dad"; the youngest child was affectionate to the foster parents; and Ariana indicated her desire to be adopted by them.

In light of these facts, the juvenile court terminated reunification services in April 2014, and set the matter for a hearing regarding the termination of mother's parental rights and possible adoption of the children by the foster parents.

In December 2014, mother filed a petition under section 388 and requested that reunification services be reinstated due to changed circumstances. The juvenile court

---

[2] The juvenile court also sustained the allegations in the petition regarding named father, David B. (father), but terminated reunification services for him due to father's incarceration. Father is not a party to this appeal.

held a hearing on the petition. Mother presented evidence that she had completed a residential drug treatment program, and had been testing "clean" for over a year; that she had attended therapy sessions to address her mental health issues; and that she was attending 12-step meetings and had a sponsor. Mother also testified that the two younger children expressed a preference to live with her, and that Ariana was unsure. The Department and counsel for the minors opposed mother's petition. The Department pointed to Ariana's statements that she liked living with the foster parents, and S.B.'s expressed desire to stay with the foster parents.

The juvenile court denied mother's petition. The court noted that mother had made efforts to rehabilitate herself, but viewed her progress against the backdrop of mother's "long history of relapsing"; the recency of her completion of the residential program; and her therapist's letter that mother was still "work[ing] towards decreasing her symptoms." To the court, this reflected "changing circumstances," not "changed circumstances." The court also noted "some issues" with regard to how the children related to her during visitation.

The juvenile court ordered the Department to investigate a report that the foster parents had been involved in a criminal offense, and mother's counsel's argument that the foster father had struck David on the buttocks.

Mother timely appeals the denial of her section 388 petition.

## DISCUSSION

Section 388 authorizes "[a]ny parent" of a child subject to the juvenile court's dependency jurisdiction to, "upon grounds of change of circumstance . . ., petition the court . . . for a hearing to change, modify, or set aside any order of court previously made . . . ." (§ 388, subd. (a)(1).) Among its other uses, section 388 can be used as "an 'escape mechanism' when parents complete a reformation in the short, final period after the termination of reunification services but before the actual termination of parental rights." (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 528 (*Kimberly F.*).)

To establish entitlement to relief under section 388, the petitioning parent must show: (1) "a change of circumstances" and (2) that "the modification of the prior order

4

would be in the best interests of the minor child[ren]." (*In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223 (*Ernesto R.*); *In re Mickel O.* (2011) 197 Cal.App.4th 586, 615 (*Mickel O.*)  In evaluating the petition, the juvenile court "may consider the entire factual and procedural history of the case." (*Mickel O.*, at p. 616.)

With respect to the first element, "the petitioner must show *changed*, not changing circumstances." (*Mickel O.*, *supra*, 197 Cal.App.4th at p. 615.)  This requirement that the circumstances have *changed*, and are not merely a transitional phase, is critical.  The focus of dependency proceedings after the juvenile court has terminated reunification services is on the child's need for a "stable and permanent" home.  (*In re Jasmon O.* (1994) 8 Cal.4th 398, 419-420.)  If the circumstances are "merely changing," "the selection of a permanent home for a child" is being "delay[ed]" just "to see if a parent, who has repeatedly failed to reunify with the child, might be able to reunify at some future point." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47.)  This delay "does not promote stability for the child." (*Ibid.*)

With respect to the second, best-interests-of-the-child element, the juvenile court must consider the petitioner's showing regarding the following factors:  "(1) the seriousness of the problem which led to the dependency, and the reason for any continuation of that problem; (2) the strength of the relative bonds between the dependent children to *both* parent and caretakers; and (3) the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been." (*Kimberly F.*, *supra*, 56 Cal.App.4th at p. 532.)  "In assessing the best interests of the child, 'a primary consideration . . . is the goal of assuring stability and continuity.'" (*Mickel O.*, *supra*, 197 Cal.App.4th at p. 616, quoting *In re Stephanie M.* (1994) 7 Cal.4th 295, 317.)

We review the juvenile court's ruling for an abuse of discretion (*In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423 (*Cliffton B.*)), and in this case conclude there was no abuse.

The juvenile court did not abuse its discretion in finding that mother had shown, at most, *changing* circumstances.  Mother's recent achievements are both noteworthy and commendable.  But they are recent, and they follow a lifetime of drug use, of clinically

5

diagnosed drug dependency, and of repeated relapses. (Accord, *Ernesto R.*, *supra*, 230 Cal.App.4th at p. 223 [denying section 388 petition, due to only "changing circumstances," where the parent "has a history of drug relapses, is in the early stages of recovery, and is still addressing a chronic substance abuse problem" has not demonstrated *changed* circumstances"].)

The juvenile court also did not abuse its discretion in finding that the best interest of the children was served by allowing them to remain with the foster parents rather than return to mother. In looking at the first and third factors, mother's substance abuse and anger issues are quite serious, and, as noted above, the progress she has made to address them is notable but recent both in time and duration when compared with a documented lifelong history of drug use, sobriety and relapse. The court had ample reason to be concerned that mother had not yet broken that cycle. The court also did not abuse its discretion in concluding that the children's familiarity with, and bond to, the foster parents was greater than their bond to mother in light of how they reacted to each and in light of their expressed preferences.

Mother principally raises three arguments in response. First, she argues that she had been clean and sober for over a year (if we credit the social worker's report of her drug use in January 2014 and even longer if we credit mother's claim that the social worker lied), and that this is longer than the periods of sobriety noted in other cases, such as the 200 days in *Cliffton B.*, *supra*, 81 Cal.App.4th 415 or the 338 days in *In re Amber M.* (2002) 103 Cal.App.4th 681. But there is no magic number of days that demonstrates "changed" circumstances; indeed, the section 388 petitions were denied in both *Cliffton B.* and *Amber M.* in light of the parents' long histories of drug use.

Second, mother argues that the juvenile court did not give sufficient weight to her testimony that the two younger children expressed a desire to live with her. Mother's testimony contradicts the children's statements to Department officials, and the court did not abuse its discretion in crediting one version of the facts over the other; what is more, it is not our role to reweigh the evidence on appeal. (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

6

Lastly, mother argues that the foster parents may be unfit in light of their possible involvement in criminal activity and in light of the possibility that the foster father might have beaten David.  However, there was no evidence before the juvenile court on either point, so it does not affect the propriety of the court's evaluation of mother's section 388 petition.  Moreover, the court postponed any termination of mother's parental rights and/or possible adoption until those issues were investigated; should either issue be substantiated, the court can at that time consider that evidence.

## DISPOSITION

The judgment of the juvenile court is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
HOFFSTADT

We concur:

_____, Acting P.J.
ASHMANN-GERST

_____, J.
CHAVEZ

7